IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PETER A. ESCALANTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-10-217-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Peter A. Escalante requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born October 17, 1967, and was forty years old at the time of the administrative hearing (Tr. 30, 119). He has a high school education (Tr. 138), and has worked as a mover, warehouseman, and quality control. (Tr. 149, 63-64). The claimant alleges that he has been unable to work since October 31, 2005, due to back injury, right hand injury, and gout. (Tr. 119, 134).

**Procedural History**

On April 20, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ David W. Engel conducted an administrative hearing and determined that the claimant was disabled beginning June 18, 2007 (but not prior to that date) in a written opinion dated January 7, 2008 (Tr. 12-21). The claimant appealed for the period prior to June 18, 2007, but the Appeals Council denied review. The ALJ's written opinion is therefore the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work, *i. e.*, he could lift/carry ten pounds frequently, and stand/walk two hours and sit six hours in an eight-hour workday, but climb ramps/stairs, stoop, crouch, crawl, reach overhead, or use foot pedals only occasionally, and never climb ropes/ladders/scaffolds

or work in environments exposed to unprotected heights, dangerous moving machinery parts, or extreme temperatures, and was further limited to understanding, remembering, and carrying out moderately detailed instructions, interacting with co-workers and supervisors under routine supervision, and interacting with the public only occasionally. (Tr. 15).  The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled prior to June 18, 2007, because there was work he could perform in the regional and national economies, *e. g.*, machine operator and assembly worker.  (Tr. 20).

## Review

The claimant contends that the ALJ erred: (i) by improperly determining his onset date in accordance with Soc. Sec. Rul. 83-20, and (ii) by failing to discuss evidence that conflicted with his findings.  The Court finds the claimant's first contention persuasive, and the decision of the Commissioner must therefore be reversed.

The record reveals that the claimant suffered from depression, headaches, and gout (Tr. 14).  He suffered back injuries in 1997 and 2001, and underwent surgery in 2001 (Tr. 253-54).  The claimant was diagnosed with acute gouty arthritis in December 2005 (Tr. 277).  As to his mental impairments, in April 2006, the claimant reported to the Oklahoma City VAMC for a primary care visit.  He indicated that he was experiencing an unsatisfactory level of pain (Tr. 297), and his depression screen came back negative although he reported several days of "[f]eeling down, depressed, or hopeless" (Tr. 299).  In June 2006, the Oklahoma Disability Division assessed that the claimant's psychiatric status was normal.  (Tr. 316-17).  In October 2006, the OKC VAMC treated the claimant

for insomnia and depression, but the claimant denied homicidal or suicidal ideation at the time. (Tr. 343). In February 2007, the OKC VAMC Progress Notes state "depression +, denies anxiety, homicidal or suicidal ideation," and indicate an adjustment to his depression medication. (Tr. 351). A state reviewing physician determined in February 2007 that the claimant had a non-severe depressive syndrome, and that the claimant had only mild functional limitations. (Tr. 400-12).

On June 17, 2007, the claimant was admitted to the emergency room at the Creek Nation hospital following an overdose of prescription medications. He told the admitting personnel that he wanted to "go to sleep," and that he took the medication to "beat the pain" (Tr. 415, 466). He was transferred to St. Francis, and attending physician Dr. Julun Hong reported that the claimant needed inpatient psychiatric treatment for depression and his suicide attempt. (Tr. 432). The claimant told Dr. Peter Rao his depression had been present for one and a half years. (Tr. 436). During this hospital stay, the claimant was assessed a Global Assessment of Functioning ("GAF") score of 29. (Tr. 437).

At the administrative hearing, the claimant testified that his suicide attempt was brought on by depression because he had not been able to talk to his children on Father's Day. He stated that he does not do much during the day, but he tries to whittle until his hands cramp, that he can read up to half an hour a day, and that he can walk ten to fifteen minutes. (Tr. 37, 46-48). He testified that the pain is in his back and down to his left knee, that he sometimes struggles with his balance, and that he has emphysema from being a smoker. (Tr. 49-53). He further testified that he still suffers symptoms of

depression, including anxiety, panic attacks, fear, and anger, but that he felt that his medication did help some. (Tr. 58-60).

In his written opinion, the ALJ summarized the claimant's testimony and medical records. He found that although the claimant reported fairly limited daily activities, this could not be objectively verified, and it would be difficult to attribute his daily activities to his medical condition in any event. (Tr. 17). The ALJ noted the claimant had reported going camping in August 2006, which he found was an indication that the claimant's daily activities had been overstated. Additionally, he questioned whether the claimant's unemployment was due to his medical condition, in light of his sporadic work history. (Tr. 17). The ALJ then concluded that "[i]n view of his depression, headaches, and gout, [the claimant] would undoubtedly have some difficulties. However, the claimant's treating physicians did not place any functional restrictions on his activities that would preclude work activity with the previously mentioned restrictions." (Tr. 17).

"With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling . . . In such cases, it [is] necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." Soc. Sec. Rul. 83-20, 1983 WL 31249, at *2. "[T]he [ALJ] should call on the services of a medical advisor when onset must be inferred." *Id.* at *3. "[T]he issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions." *Blea v. Barnhart*, 466 F.3d 903,

-6-

912 (10th Cir. 2006).  *See also Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) ("[A] medical advisor need be called only if the medical evidence of onset is ambiguous."); *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) ("In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor.").  An ambiguity in the evidence is only an issue if it involves the possibility that the onset date was prior to the expiration of insured status.  *See Hill v. Astrue*, 289 Fed. Appx. 289, 294 (10th Cir. 2008) ("Expert testimony is helpful where the ALJ has determined that the claimant eventually became disabled but there is some ambiguity about whether the onset of this disability occurred prior to the expiration of the claimant's insured status."), *citing Blea*, 466 F.3d at 913.

      The claimant alleged an onset of disability on October 31, 2005, and his insured status expired on December 31, 2006.  (Tr. 119-24).  The ALJ determined the claimant did not become disabled until June 18, 2007, following his attempted suicide.  (Tr. 18). In reaching his decision, the ALJ noted that at the time of the suicide attempts, the claimant: (i) revealed poor insight and judgment; (ii) was assessed with a major depressive disorder and had a GAF of 29; (iii) was found permanently disabled and unable to secure gainful employment by the VA on December 3, 2007, due to depression, gastroesophageal reflux disorder, irritable bowel syndrome, and gout.  (Tr. 18).

      The Commissioner argues that the ALJ was not required to seek the assistance of a medical advisor under Soc. Sec. Rul. 83-20 because the medical evidence in this case was not ambiguous.  But the ALJ's reasoning lends credence to the presence of ambiguities. *See Blea*, 466 F.3d at 912-13 ("Mr. Blea's medical record is indisputably incomplete

during a pertinent time period, June to December 1998.  But, rather than call[ing] on the services of a medical advisor when onset must be inferred, the ALJ made negative inferences against Mr. Blea due to the gap in the medical record.  An ALJ may not make negative inferences from an ambiguous record; rather, [he] must call a medical advisor pursuant to [Soc. Sec. Ruling] 83-20."), *citing* Soc. Sec. Rul. 83-20, 1983 WL 31249, at *3 and *Reid*, 71 F.3d at 374.  The medical evidence suggests that the claimant's condition may have worsened between October 2006 (prior to the date last insured) and February 2007, *i. e.*, notes in February 2007 indicate "depression +," which could be interpreted to mean an increase in depression.  "[W]ith respect to the onset date of a disability, . . . an ALJ 'may not make negative inferences from an ambiguous record; rather, it must call a medical advisor pursuant to SSR 83-20." *Bigpond v. Astrue*, 280 Fed. Appx. 716, 717-18 (10th Cir. 2008) ("[T]he issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions.'"), *quoting Blea*, 466 F.3d at 912-13.  Thus, the ALJ should have called upon a medical advisor to infer the onset of the claimant's disability.  *See Blea*, 466 F.3d at 912 ("[T]he issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions.").  *See also Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) ("In the absence of clear evidence documenting the progression of [the

claimant's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor.").

Because the ALJ should have consulted a medical advisor pursuant to Soc. Sec. Rul. 83-20, the decision of the Commissioner must be reversed and the case remanded to the ALJ for compliance with Soc. Sec. Rul. 83-20.  On remand, the ALJ should call a medical advisor regarding the claimant's onset of disability, then re-determine when the claimant became disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 28th day of September, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma